PART ①

THE "Plaintiff, United States acting without standing is in violation of Sixth, Second, and Fifth Amendment rights of the accused . By executive branch prosecution .

Ⓐ

The sixth Amendment identifies the basic rights that the accused shall enjoy in all criminal prosecutions. They are presented strickly as rights that are available in preperation for trial and at the trial itself."[MARTINEZ V. COURT OF APPEAL OF CALIFORNIA , FOURTH APPELATE DISTRICT,528 US 152](2000)

"In the federal courts, the right of self-representation has been protected by statute since the beginning of our Nation. Section 35 of the Judiciary Act of 1789, 1 Statute 73, 92, enacted by the First Congress and signed by President Washington one day before the Sixth Amendment."

"To thrust counsel upon the accused against his considered wish, thus violates the logic of the Amendment."

"This allocation can only be justified, however by the defendants consent at the outset, to accept counsel as his representative . An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction." [FARETTA V. STATE OF CALIFORNIA,422 US 806](1975)

"As issues are so presented , that the judicial power is capable of acting on them finally as between the parties bofore the court, we connot adjudge that the mode prescribed for enforcing the lawful orders of the Interstate Commerce Commission is not calculated to attain the object for which Congress was given power to regulate interstate commerce.         (cont.)....

Pepo H. El    Docket #1:21-CR-10045-ADB

/ /12/2024  Page 90

"It cannot be declared unless the incompatabilty between the Constitution and the Act of Congress is clear and strong."

"It is scarcely necessary to say that the power given to Congress to regulate interstate commerce does not carry with it any power to destroy or impair those guarantees." [INTERSTATE COMMERCE COMMISSION V. BRIMSON[38 L Ed 1047](See S. C. Reporters ed. 447-490.)

The foregone case law explains right to self-representation and plaintifs use of "in and affecting commerce"to gain subject-matter jurisdiction unduly.   The following case law explains Congress' to punish as limited , and an Act dispelling gained jurisdiction .

"No general power of inflicting punishment by the Congress of the United States is found in that instrument. It contains in the provision that no person shall be deprived of life, liberty, or property, without due process of law, the strongest implication against punishment by order of the legislative body. It has been repeatedly decided by this court and by others of the highest authority, that this means a trial in which the rights of the party shall be decided appointed by law,  which tribunal is to be governed by rules of law previously established. An act of Congress which preposedto adjudge a man guilty of a crime and inflict the punishment, would be conceded by all thinking men to be unauthorized by anything in the Constitution, that instrument however, is not wholly silent as to the authority of the separate branches of Congressto inflict punishment. It authorizes each house to punish its own members."[KILBOURN V. THOMPSON[26 L Ed 377](See S.C. 13 Otto, 168-205)

(cont.)....

" We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conducts aggregate effect on interstate commerce." "The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involed in interstate commerce has always been the province of the States. See , e.g. Cohens v. Virginia, 6 Wheat 264, 426, 428, 5 L Ed 257 (1821) (Marshall, C. J.) (stating that Congress has no general right to punish murder commited within any of the States, and that it is clear...that Congress cannot punish felonies generally).  Indeed ,we can think of no better example of the police power, which the founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victim s."[UNITED STATES V. MORRISON,529 US 598](2000)



"The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of the common law and jurisprudents of the United States and do not represent a bona-fide expansion of the common law . The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the constitution, by Congress, or by the legislatures of the several States. Such an expansion of liability would constitute a deprivation of the rights, privil- eges, and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution." [TITLE 15 USC SECTION 7901] PROTECTION OF LAWFUL COMMERCE IN ARMS

"When an affirmative statute contains no expression of a
purpose to repeal a prior law, it does not repeal it inless the two
Acts are in irreconcilable conflict, or unless the later statute
covers the whole ground occupied by the earlier, and is clearly int
ended as a substitute for it; and the intention of the Legislature
to repeal must be clear and manifest."[TOWN OF RED ROCK V. HENRY[
(1883)

"We turn to the phrases "keep arms" and "bear arms" Johnson
defined "keep" as, most relavantly, to retain and not lose, and to
have in custody. Johnson 1095. Webster defined it as to hold; to re
tain ones power or possession. No party has apprised us of an
idiomatic meaning of keep arms.  Thus, the most natural reading of
"keep arms" in the Second Amendment is to have weapons".

"At time of
the founding, as now, "bear" meant to "carry". See Johnson 161;
webster; T. Sheridan, A Complete Dictionary of the English
Language(1796); 2 Oxford English Dictionary 20(2nd ed. 1989)
(hereinafter Oxford).  When used with "arms" however, the term has
a meaning that refers to carrying for a particular purpose,
confrontation. In Muscarello v. United States,524 US 125, 118 S.
Ct. 1911, 141 L. Ed. 2d 111 (1998), in the course of analyzing the
meaning of carries a firearm in a federal criminal statute,
Justice Ginburg wrote that surely a most familiar meaning is, as
the Constitutions Second amendment indicates , wear, bear, or carry
...upon the person or in the clothing, or in a pocket, for the
purpose... of being armed and ready for offensive or defensive
action in the case of conflict with another person."[DISTRICT OF
COLUMBIA V. HELLER,554 US 570](2008)

"Declaration of Rights (1776), reprinted in 5 THORPE 3081-3084 (declaring that "all men are born equally free and independent and have certain natural, inherent and inalienable rights" ,including the right to worship Almighty God according to the dictates of their own consciences , and the "right to bear arms for the defense of themselves and the State.)" [BUTCHERS UNION SLAUGHTER-HOUSE AND LIVE STOCK LANDING COMPANY V. CRESCENT CITY LIVE STOCK LANDING AND SLAUGHTER - HOUSE COMPANY[28 L Ed 585] (1885)

"OVERVIEW:HOLDINGS:[1]- Applicants for licenses to carry concealed weapons were unconstitutionally denied their right to bear arms by the county, requirement that the applicants demonstrate good cause by documenting specific threats against them ,since responsible ,law abiding citizens had right to carry firearms in public for self-defense[PERUTA V. COUNTY OF SAN DIEGO,742 F. 3d 1144](2014)

"OVERVIEW:HOLDING:[1]-Where the State of New York issued public carry licenses only when an applicant demonstrated special need for self-defense, the States licencing regime violated the Constitution, because the Second and Fourteenth Amendments protected an individual right to carry a handgun for self-defense, outside the home."[NEW YORK STATE RIFLE AND PISTOL ASSOCIATION INC. V. BRUEN,597__,142 S Ct__,213](2022)

"The right of bearing arms for a lawful purpose, is not a right granted by the Constitution, neither is it in any manner dependent upon that instrument for its existence. the Second Amendment declares that it shall not be infringed, but this means no more tha that it shall not be infringed by Congress. [UNITED STATES V. CRUIKSHANK[23 L Ed 588]
 (6) -right of bearing arms-

Due Process violation of the PROCEDURAL and SUBSTANTIVE nature are taking place with case#1:21-CR-10045-ADB, of Second, Fifth and Sixth Amendment law , by the court acting outside of its Constitutional purpose expressed by the U.S. Government Charter .



"The due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights, is due process of law."[KENNARD V. STATE OF LOUISIANA] [23 L Ed 478]

"Were due process merely a procedural safeguard, it would fail to reach those situations where the deprivation of life, liberty, or property was accomplished by legislation, which by operating in the future could, givineven the fairest possible procedure in application to individuals, nevertheless destroy the enjoyment of all three."[POE V. ULLMAN,367 US 497](1961)

"The court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility."[TITLE 18 USC Section 4241 (d)

"It is not the breaking of his doors and the rummaging of his drawers that constitutes the essence of the offense; butit is the invasion of his indefeasible right to personal security , personal liberty, and private property, where the right has never been forfeited by his conviction of some public offense." [WEEKS V. UNITED STATES[58 L Ed 652](1914)  also the same in; [BOYD V. UNITED STATES[29 L Ed 746](1886)

"That all men are endoewed , not by the edicts of Emporers or decrees of Parliament or Act of Congress, but by their creator with certain inalienable rights, that is , rights which cannot be bartered away or givin away or taken away except in punishment of crime."[BUTCHERS UNION SLAUGHTER-HOUSE AND LIVE-STOCK LANDING COMPANY V.  CRESCENT CITY LIVE STOCK LANDING AND SLAUGHTER-HOUSE COMPANY [28 L Ed 585(1884)

"NIETHER SLAVERY NOR INVOLUNTARY SERVITUDE, EXCEPT AS A PUNISHMENT FOR CRIME, WHEREOF THE PARTY SHALL HAVE BEEN DULY CONVICTED [13th AMENDMENT , U.S. CONSTITUTION]

"Our law, based upon centuries of tragic human experience
, requires that before a man can be sent to the peniteniary, he is
entitled to a speedy trial, to be present in court at every step
of the proceedings, at all times to be represented by counsel, or
to speak on his own behalf, and to be informed in open court, of
every action taken against him untill he is lawfully sentenced.
These are not mere ceremonials to be neglected at will in the
interest of a crowded calender or other expediences.  They are bas-
ic rights. They bulk large in the totality of proceedural rights
guaranteed to persons accused of crime."[POLLARD V. UNITED STATES,
352 US 354](1957)

---

The  Plaintiff has never properly gained "subject-matter
jurisdiction in the court , and it surely is not an administrative
court acting under ARTICLE I.  By that , the judiciary has violated
the accused/defendants rights guaranteed by Constitutional law
of the Second,Fifth, and Sixth Amendment law.

## Amendment 6 Rights of the accused.

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

USCONST                                    1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



1

**SALVADOR MARTINEZ, Petitioner**

*vs.*

**COURT OF APPEAL OF CALIFORNIA, FOURTH APPELLATE DISTRICT**

**528 US 152, 145 L Ed 2d 597,  120 S Ct 684**

[No. 98-7809]

**Argued November 9, 1999.**

**Decided January 12, 2000.**

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

1

**[1c][3][4]**  The Faretta majority's reliance on the structure of the Sixth Amendment is also not relevant.  The Sixth Amendment identifies the basic rights that the accused shall enjoy

[528 US 160]

in "all criminal prosecutions."  They are presented strictly as rights that are available in preparation for trial and at the trial itself.  The Sixth Amendment does not include any right to appeal.  As we have recognized, "[t]he right of appeal, as we presently know it in criminal cases, is purely a creature of statute."  Abney, 431 US, at 656, 52 L Ed 2d 651, 97 S Ct 2034.  It necessarily follows that the Amendment itself does not provide any basis for finding a right to self-representation on appeal.

2LED2D                              1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

ANTHONY PASQUALL FARETTA, Petitioner,

*vs.*

STATE OF CALIFORNIA

**422 US 806, 45 L Ed 2d 562, 95 SCT 2525**

[No. 73-5772]

**Argued November 19, 1974.**

**Decided June 30, 1975.**

LED2                                     1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## II

    In the federal courts, the right of self-representation has been protected by statute since the beginnings of our Nation.  Section 35 of the Judiciary Act of 1789, 1 Stat 73, 92, enacted by the First Congress and signed by President Washington one day before the Sixth Amendment

[422 US 813]

was proposed, provided that "in all the courts of the United States, the parties may plead and manage their own causes personally or by the assistance of ... counsel.  ..."  The right is currently codified in 28 USC § 1654 [28 USCS § 1654].

LED2                                          1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

The right to defend <*pg. 573>

[422 US 820]

is given directly to the accused; for it is he who suffers the consequences if the defense fails.

**[9][10]**   The counsel provision supplements this design.   It speaks of the "assistance" of counsel, and an assistant, however expert, is still an assistant.   The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant-not an organ of the State interposed between an unwilling defendant and his right to defend himself personally.   To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment.   In such a case, counsel is not an assistant, but a master;[16]   and the right to make a defense is stripped of the personal character upon which the Amendment insists.   It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas.   Cf. Henry v Mississippi, 379 US 443, 451, 13 L Ed 2d 408, 85 S Ct 564; Brookhart v Janis, 384 US 1, 7-8, 16 L Ed 2d 314, 86 S Ct 1245; Fay v Noia, 372 US 391, 439, 9 L Ed 2d 837, 83 S Ct 822.   This allocation can only be justified, however, by the defendant's consent, at the

[422 US 821]

outset, to accept counsel as his representative.   An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction.   Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed <*pg. 574> him by the Constitution, for, in a very real sense, it is not his defense.

**B**

The Sixth Amendment, when naturally read, thus implies a right of self-representation.   This reading is reinforced by the Amendment's roots in English legal history.

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## Amendment 2 Right to bear arms.

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

THE INTERSTATE COMMERCE COMMISSION, Appt.,

*vs.*

W. G. BRIMSON et al.

## [38 L Ed 1047] (See S. C. Reporter's ed. 447-490.)

[No. 883.]

**Argued April 16, 17, 1894.  Decided May 26, 1894.**

HEADNOTES

**Classified to U.S. Supreme Court Digest, Lawyers' Edition**

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[154 US 478]

As the circuit court is competent under the law by which it was ordained and established to take jurisdiction of the parties, and as a case arises under the Constitution or laws of the United States when its decision depends upon either, why is not this proceeding judicial in form and instituted for the determination or distinct issues between the parties, as defined by formal pleadings, a case or controversy for judicial cognizance, within the meaning of the Constitution? It must be so regarded, unless, as is contended, Congress is without power to provide any method for enforcing the statute or compelling obedience to the lawful orders of the Commission, except through criminal prosecutions or by civil actions to recover penalties imposed for non-compliance with such orders. But no limitation of that kind upon the power of Congress to regulate commerce among the states is justified either by the letter or the spirit of the Constitution. Any such rule of constitutional interpretation, if applied to all the grants of power made to Congress, would defeat the principal objects for which the Constitution was ordained. As the issues are so presented that the judicial power is capable of acting on them finally as between the parties before the court, we cannot adjudge that the mode prescribed for enforcing the lawful orders of the Interstate Commission is not calculated to attain the object for which Congress was given power to regulate interstate commerce. It cannot be so declared unless the incompatibility between the Constitution and the Act of Congress <*pg. 1058> is clear and strong. Fletcher v. Peck, 10 U. S. 6 Cranch. 87, 128 [3: 162, 175]. In accomplishing the objects of a power granted to it, Congress may employ any one or all the modes that are appropriate to the end in view, taking care only that no mode employed is inconsistent with the limitations of the Constitution.

We do not overlook those constitutional limitations which, for the protection of personal rights, must necessarily attend all investigations conducted under the authority of Congress. Neither branch of the legislative department, still less any merely administrative body, established by Congress, possesses, or can be invested with, a general power of making inquiry into the private affairs of the citizen. Kilbourn v. Thompson,

LED                                                    1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

It was said in argument that the twelfth section was in derogation of those fundamental guarantees of personal rights that are recognized by the Constitution as inhering in the freedom of the citizen.  It is scarcely necessary to say that the power given to Congress to regulate interstate commerce does not carry with it any power to destroy or impair those guarantees.  This court has already spoken fully upon that general subject in Counselman v. Hitchcock, 142 U. S. 547 [35: 1110], 3 Inters. Com. Rep. 816.  We need not add anything to what has been there said.  Suffice it in the present case to say that as the Interstate Commerce Commission, by petition in a circuit court of the United States, seeks, upon grounds distinctly set forth, an order to compel appellees to answer particular questions and to produce certain books, papers, etc., in their possession, it was open to each of them to contend before that court that he was protected by the Constitution from making answer to the questions propounded to him; or that he was not legally bound to produce the books, papers, etc., ordered to be produced; or that neither the questions propounded nor the books, papers, etc., called for relate to the particular matter under investigation, nor to any matter which the Commission is entitled under the Constitution or laws to investigate.  These issues being determined in their favor by the court below, the petition of the Commission could have been dismissed upon its merits.

[154 US 480]

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

HALLET KILBOURN, Plff. in Err.,
*vs.*
JOHN G. THOMPSON et al.

## [26 L Ed 377] (See S. C., 13 Otto, 168-205.)

[No. 18.]

Argued Jan. 13, 14, 1880.  Decided Jan. 24, 1881.  Rescinded Feb. 28, 1881.  Redecided
Feb. 28, 1881, as of Jan. 24, 1881.

HEADNOTES

Classified to U.S. Supreme Court Digest, Lawyers' Edition

**Right of House of Representatives to punish for contempt - power to punish its own members - <\*pg. 378> absent members - qualification of members - impeachment - power to punish witness - limit of power - governmental powers - invalid resolution - want of authority - power of courts - false imprisonment - privileges of members.**

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

No general power of inflicting punishment by the Congress of the United States is found in that instrument. It contains in the provision that no "person shall be deprived of life, liberty or property, without due process of law," the strongest implication against punishment by order of the legislative body. It has been repeatedly decided by this court and by others of the highest authority, that this means a trial in which the rights of the party shall be decided by a tribunal appointed by law, which tribunal is to be governed by rules of law previously established. An Act of Congress which proposed to adjudge a man guilty of a crime and inflict the punishment, would be conceded by all thinking men to be unauthorized by anything in the Constitution That instrument, however, is not wholly silent as to the authority of the separate branches of Congress to inflict punishment. It authorizes each House to punish its own members. The 3d clause of the 15th section of the first article declares that "Each House may determine the rules of its proceedings, punish its members for disorderly behavior and, with the concurrence of two thirds, expel a member." And in the clause just preceding it is said that they "may be authorized to compel the attendance of absent members, in such manner and under such penalties as each House may provide." These provisions are equally instructive in what they authorize and in what they do not authorize. There is no express power in that instrument conferred on either House of Congress to punish for contempts.

The advocates of this power have, therefore, resorted to an implication of its existence founded

[103 US 183]

on two principal arguments.

LED                                                    1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Especially is it competent and proper for this court to consider whether its proceedings are in conformity with the Constitution and laws, because living under a written Constitution, no branch or department of the government is supreme, and it is the province and duty of the judicial department to determine in cases regularly brought before them, whether the powers of any branch of the government, and even those of the Legislature in the enactment of laws, have been exercised in conformity to the Constitution; and if they have not, to treat their acts as null and void.   The House of Representatives has the power under the Constitution to imprison for contempt, and the power is limited to the cases expressly provided for by the Constitution, or to cases where the power is necessarily implied from these constitutional functions and to the proper performance of which it is essential."

In this statement of the law, and in the principles there laid down, we fully concur.

We must, therefore, hold, notwithstanding what is said in the case of Anderson v. Dunn,

[103 US 200]

LED                                      1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

UNITED STATES, Petitioner
*vs.*
ANTONIO J. MORRISON et al. (No. 99-5)

CHRISTY BRZONKALA, Petitioner
*vs.*
ANTONIO J. MORRISON et al. (No. 99-29)

**529 US 598, 146 L Ed 2d 658,  120 S Ct 1740**

**Argued January 11, 2000.**

**Decided May 15, 2000.**

2LED2D                                          1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[529 US 617]

**[13a][14a]**   We accordingly reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce. The Constitution requires a distinction between what is

[529 US 618]

truly national and what is truly local.  Lopez, 514 US, at 568, 131 L Ed 2d 626, 115 S Ct 1624 (citing Jones & Laughlin Steel, 301 US, at 30, 81 L Ed 893, 57 S Ct 615).  In recognizing this fact we preserve one of the few principles that has been consistent since the Clause was adopted.  The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States.  See, e.g., Cohens v Virginia, 6 Wheat 264, 426, 428, 5 L Ed 257 (1821) (Marshall, C. J.) (stating that Congress "has no general right to punish murder committed within any of the States," and that it is "clear . . . that congress cannot punish felonies generally"). Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.[8]  See, e.g., Lopez, 514 US, at 566, 131 L Ed 2d 626, 115 S Ct 1624 ("The Constitution . . . <*pg. 677> withhold[s] from Congress a plenary police power"); id., at 584-585, 131 L Ed 2d 626, 115 S Ct 1624 (Thomas, J., concurring) ("[W]e always have rejected readings

[529 US 619]

of the Commerce Clause and the scope of federal power that would permit Congress to exercise a police power"), 596-597, and n 6, 131 L Ed 2d 626, 115 S Ct 1624 (noting that the first Congresses did not enact nationwide punishments for criminal conduct under the Commerce Clause).

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## § 453.  Oaths of justices and judges

Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: "I, ___, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as ___ under the Constitution and laws of the United States. So help me God."

**HISTORY:**
June 25, 1948, ch 646, 62 Stat. 907; Dec. 1, 1990, P. L. 101-650, Title IV, Subtitle I, § 404, 104 Stat. 5124.

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*B*

# CHAPTER 105. PROTECTION OF LAWFUL COMMERCE IN ARMS

§ 7901.  Findings; purposes
§ 7902.  Prohibition on bringing of qualified civil liability actions in Federal or State court
§ 7903.  Definitions

## § 7901.  Findings; purposes

**(a) Findings.**   Congress finds the following:

**(1)** The Second Amendment to the United States Constitution provides that the right of the people to keep and bear arms shall not be infringed.

**(2)** The Second Amendment to the United States Constitution protects the rights of individuals, including those who are not members of a militia or engaged in military service or training, to keep and bear arms.

**(3)** Lawsuits have been commenced against manufacturers, distributors, dealers, and importers of firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.

**(4)** The manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws. Such Federal laws include the Gun Control Act of 1968, the National Firearms Act [26 USCS §§ 5801 et seq.], and the Arms Export Control Act [22 USCS §§ 2751 et seq.].

**(5)** Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

**(6)** The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

USCS                                        1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(7) The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law. The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States. Such an expansion of liability would constitute a deprivation of the rights, privileges, and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution.

(8) The liability actions commenced or contemplated by the Federal Government, States, municipalities, private interest groups and others attempt to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees thereby threatening the Separation of Powers doctrine and weakening and undermining important principles of federalism, State sovereignty and comity between the sister States.

(b) **Purposes.**   The purposes of this Act are as follows:

(1) To prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.

(2) To preserve a citizen's access to a supply of firearms and ammunition for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting.

(3) To guarantee a citizen's rights, privileges, and immunities, as applied to the States, under the Fourteenth Amendment to the United States Constitution, pursuant to section 5 of that Amendment.

(4) To prevent the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce.

(5) To protect the right, under the First Amendment to the Constitution, of manufacturers, distributors, dealers, and importers of firearms or ammunition products, and trade associations, to speak freely, to assemble peaceably, and to petition the Government for a redress of their grievances.

(6) To preserve and protect the Separation of Powers doctrine and important principles of

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**TOWN OF RED ROCK, Plff. in Err.,**
*vs.*
**JACOB A. HENRY.**

**[27 L Ed 251] (See S. C., 16 Otto, 596 - 605.)**

[No. 134.]

**Submitted Dec. 14, 1882.  Decided Jan. 8, 1883.**

HEADNOTES

**Classified to U.S. Supreme Court Digest, Lawyers' Edition**

**Repeal of statute by implication - railroad aid laws - unconstitutional Act.**

1. When an affirmative statute contains no expression of a purpose to repeal a prior law, it does not repeal it unless the two Acts are in irreconcilable conflict, or unless the later statute covers the whole ground occupied by the earlier and is clearly intended as a substitute for it; and the intention of the Legislature to repeal must be clear and manifest.

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

1

**DISTRICT OF COLUMBIA, et al., Petitioners**
*vs.*
**DICK ANTHONY HELLER**

**554 US 570,  128 S Ct 2783, 171 L Ed 2d 637, 2008 US LEXIS 5268**

[No. 07-290]

**Argued March 18, 2008.**

**Decided June 26, 2008.**

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

1

We turn to the phrases ``keep arms'' and ``bear arms.'' Johnson defined ``keep'' as, most relevantly, ``[t]o retain; not to lose,'' and ``[t]o have in custody.'' Johnson 1095. Webster defined it as ``[t]o hold; to retain in one's power or possession.'' No party has apprised us of an idiomatic meaning of ``keep Arms.'' Thus, **[7]** the most natural reading of ``keep Arms'' in the Second Amendment is **to ``have weapons.''**

The phrase ``keep arms'' was not prevalent in the written documents ofthe<\*pg. 652> founding period that we have found, but there are a few examples, all of which favor viewing the right to ``keep Arms'' as an individual right unconnected with militia service. William Blackstone, for example, wrote that Catholics convicted of not attending service in the Church of England suffered certain penalties, one of which was that they were not permitted to ``keep arms in their houses.'' 4 Commentaries on the Laws of England 55 (1769) (hereinafter Blackstone); see also 1 W. & M., ch. 15, § 4, in 3 Eng. Stat. at Large 422 (1689) (``[N]o Papist . . . shall or may have or keep in his House . . . any Arms . . .''); 1 W. Hawkins, Treatise on the Pleas of the Crown 26 (1771) (similar). Petitioners point to militia laws of the founding period that required militia members to ``keep'' arms in connection with

[554 U.S. 583]

militia service, and they conclude from this that the phrase ``keep Arms'' has a militia-related connotation. See Brief for Petitioners 16-17 (citing laws of Delaware, New Jersey, and Virginia). This is rather like saying that, since there are many statutes that authorize aggrieved employees to ``file complaints'' with federal agencies, the phrase ``file complaints'' has an employment-related connotation. ``Keep arms'' was simply a common way of referring to possessing arms, for militiamen and everyone else. [7]

[554 U.S. 584]

**[8]** At the time of the founding, as now, to ``bear'' meant to ``carry.'' See Johnson 161; Webster; T. Sheridan, A Complete Dictionary of the English Language (1796); 2 Oxford English Dictionary 20 (2d ed. 1989) (hereinafter Oxford). When used with ``arms,'' however, the term has a meaning that refers to carrying for a particular purpose-confrontation. In Muscarello v. United States, 524 U.S. 125, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998), in the course of analyzing the meaning of ``carries a firearm'' in a federal criminal statute, Justice Gins-<\*pg. 653> burg wrote that ``[s]urely a most familiar meaning is, as the Constitution's Second Amendment . . . indicate[s]: 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person.' '' Id., at 143, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (dissenting opinion) (quoting

2LED2D                                                1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**BUTCHERS' UNION SLAUGHTER-HOUSE AND LIVE STOCK LANDING COMPANY, Appt.,**

*vs.*

**CRESCENT CITY LIVE STOCK LANDING AND SLAUGHTER-HOUSE COMPANY.**

**[28 L Ed 585] (See S. C., Reporter's ed., 746-766.)**

[No. 627.]

**Argued Apr. 9, 10, 1884.  Decided May 5, 1884.**

HEADNOTES

**Classified to U.S. Supreme Court Digest, Lawyers' Edition**

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

1

After declaring their independence, the newly formed States replaced their colonial charters with constitutions and state bills of rights, almost all of which guaranteed the same fundamental rights that the former colonists previously had claimed by virtue of their English heritage. See, e. g., Pa. Declaration of Rights (1776), reprinted in 5 Thorpe 3081-3084 (declaring that ``all men are born equally free and independent, and have certain natural, inherent and **inalienable rights**,'' including the ``right to worship Almighty God according to the dictates of their own consciences'' and the ``right to bear arms for the defence of themselves and the state'').[5]

Several years later, the Founders amended the Constitution to expressly protect many of the same fundamental rights against interference by the Federal Government. Consistent with their English heritage, the founding generation generally did not consider many of the rights identified in these amendments as new entitlements, but as **inalienable rights** of all men, given legal effect by their codification in the Constitution's text. See, e.g., 1 Annals of Cong. 431-432, 436-437, 440-442 (1834) (statement of Rep. Madison) (proposing Bill of Rights in the first Congress); The Federalist No. 84, pp. 531-533 (B. Wright ed. 1961) (A. Hamilton); see also Heller, 554 U.S., at --, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (``[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a <*pg. 947> pre-existing right''). The Court's subsequent decision in Barron, however, made plain that the codification of these rights in the Bill made them legally enforceable only against the Federal Government, not the States. See 7 Pet., at 247, 8 L. Ed. 751.

3

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

---

**EDWARD PERUTA; MICHELLE LAXSON; JAMES DODD; LESLIE BUNCHER, Dr.; MARK CLEARY; CALIFORNIA RIFLE AND PISTOL ASSOCIATION FOUNDATION, Plaintiffs - Appellants, v. COUNTY OF SAN DIEGO; WILLIAM D. GORE, individually and in his capacity as Sheriff, Defendants - Appellees.**

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

**742 F.3d 1144; 2014 U.S. App. LEXIS 2786**

**No. 10-56971**

**December 6, 2012, Argued and Submitted, San Francisco, California**

**February 13, 2014, Filed**

---

**Editorial Information: Subsequent History**

As Corrected March 24, 2014.Counsel Amended March 4, 2014.Stay granted by, Motion granted by Peruta v. County of San Diego, 2014 U.S. App. LEXIS 18929 (9th Cir. Cal., Feb. 28, 2014)Motion denied by Peruta v. County of San Diego, 771 F.3d 570, 2014 U.S. App. LEXIS 21509 (9th Cir., 2014)Vacated by, Rehearing, en banc, granted by Peruta v. County of San Diego, 781 F.3d 1106, 2015 U.S. App. LEXIS 4941 (9th Cir., 2015)Different results reached on rehearing at, En banc, Motion granted by Peruta v. Cnty. of San Diego, 2016 U.S. App. LEXIS 10436 (9th Cir. Cal., June 9, 2016)

**Editorial Information: Prior History**

{2014 U.S. App. LEXIS 1}
Appeal from the United States District Court for the Southern District of California. D.C. No. 3:09-cv-02371-IEG-BGS. Irma E. Gonzalez, Chief District Judge, Presiding.Peruta v. County of San Diego, 758 F. Supp. 2d 1106, 2010 U.S. Dist. LEXIS 130878 (S.D. Cal., 2010)

**Disposition:**
REVERSED and REMANDED.

**Counsel**                Paul D. Clement, Bancroft PLLC; Washington;D.C. argued the cause for the plaintiffs-appellants. Carl D. Michel, Michel & Associates, P.C., Long Beach, California, filed the briefs for the plaintiffs-appellants. With him on the briefs were Glenn S. McRoberts, Sean A. Brady, Anna M. Barvir, Clinton B. Monfort, and Bobbie K. Ross, Michel & Associates, P.C., Long Beach, California, and Paul Neuharth, Jr., Paul Neuharth, Jr. APC., San Diego, California.

James M. Chapin, Senior Deputy Attorney for County of San, San Diego, California, argued the cause and filed the brief for defendant-appellee William D. Gore. With him on the brief was Thomas E. Montgomery, County Counsel for County of San Diego, San Diego, California.

Stephen P. Halbrook, Fairfax, Virginia, filed the brief on behalf of amicus curiae Congress of Racial Equality, Inc. in support of the plaintiffs-appellants.

Paul D. Clement, Bancroft PLLC, {2014 U.S. App. LEXIS 2}Washington, D.C., filed the brief on behalf of amicus curiae National Rifle Association of America, Inc. in support of plaintiffs-appellants.

David B. Kopel, Independence Institute, Golden, Colorado, filed the brief on behalf of amici curiae International Law Enforcement Educators and Trainers Association and the Independence Institute.

Alan Gura, Gura & Possessky, PLLC, Alexandria, Virginia, filed the brief on behalf of amici curiae Second Amendment Foundation, Inc., Calguns

A09CASES                              1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Foundation, Inc., Adam Richards, and Brett Stewart in support of plaintiffs-appellants.

John C. Eastman, Chapman University School of Law, Orange, California, filed the brief on behalf of amici curiae Center for Constitutional Jurisprudence, Doctors for Responsible Gun Ownership, and Law Enforcement Alliance of America. With him on the brief were Anthony T. Caso and Karen J. Lugo.

Don B. Kates, Battle Ground, Washington, filed the brief on behalf of amici curiae Gun Owners of California and Senator H.L. Richardson (Ret.) in support of plaintiffs-appellants.

Neil R. O'Hanlon, Hogan Lovells U.S. LLP, Los Angeles, California, filed the brief on behalf of amici curiae Brady Center to Prevent Gun Violence, the International {2014 U.S. App. LEXIS 3}Brotherhood of Police Officers, and the Police Foundation. With him on the brief were Adam K. Levin, S. Chartey Quarcoo, and Samson O. Asiyanbi, Hogan Lovells US LLP, Washington, D.C., and Jonathan E. Lowy and Daniel R. Vice, Brady Center to Prevent Gun Violence, Washington, D.C.

Paul R. Coble, Law Offices of Jones & Mayer, Fullerton, California, filed the brief on behalf of amici curiae California State Sheriffs Association, California Police Chiefs Association, and California Peace Officers Association in support of defendants-appellees. With him on the brief was Martin J. Mayer, Law Offices of Jones & Mayer, Fullerton, California.

Simon J. Frankel, Covington & Burling LLP, San Francisco, California, filed the brief on behalf of amici curiae Legal Community against Violence, Major Cities Chiefs Association, Association of Prosecuting Attorneys, and San Francisco District Attorney George Gascón in support of defendants-appellees. With him on the brief were Samantha J. Choe, Steven D. Sassaman, and Ryan M. Buschell, Covington & Burling LLP, San Francisco, California.

**Judges:** Before: O'SCANNLAIN, THOMAS, and CALLAHAN, Circuit Judges. THOMAS, Circuit Judge, dissenting.

**CASE SUMMARY**Applicants for licenses to carry a concealed weapon were unconstitutionally denied their right to bear arms by a county requirement that the applicants demonstrate good cause by documenting specific threats against them, since responsible, law-abiding citizens had a right to carry firearms in public for self-defense.

**OVERVIEW:** HOLDINGS: [1]-Applicants for licenses to carry a concealed weapon were unconstitutionally denied their right to bear arms by a county requirement that the applicants demonstrate good cause by documenting specific threats against them, since responsible, law-abiding citizens had a right to carry firearms in public for self-defense

A09CASES

2

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

1

# NEW YORK STATE RIFLE & PISTOL ASSOCIATION, INC., et al., Petitioners
*vs.*
# KEVIN P. BRUEN, in his official capacity as SUPERINTENDENT OF NEW YORK STATE POLICE, et al.

## 597 US ___, 142 S Ct ___, 213 L Ed 2d 387, 2022 US LEXIS 3055

[No. 20-843]

**Argued November 3, 2021.**

**Decided June 23, 2022.**

## DECISION

Where State of New York issued public-carry licenses only when applicant demonstrated special need for self-defense, State's licensing regime violated Constitution because Second and Fourteenth Amendments protected individual's right to carry handgun for self-defense outside the home.

*Prior history:* ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT, 818 Fed. Appx. 99, 2020 U.S. App. LEXIS 27455

## SUMMARY

*Overview:* HOLDINGS: [1]-Where the State of New York issued public-carry licenses only when an applicant demonstrated a special need for self-defense, the State's licensing regime violated the Constitution because the Second and Fourteenth Amendments protected an individual's right to carry a handgun for self-defense outside the home. A State could not prevent law-abiding citizens from publicly carrying handguns because they had not demonstrated a special need for self-defense.

*Outcome:* Judgment reversed; case remanded. 6-3 decision; 3 concurrences; 1 dissent.

2LED2D                                    1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## Amendment 5 Criminal actions—Provisions concerning—Due process of law and just compensation clauses.

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

USCONST                                        1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**UNITED STATES, Plff. in Err.,**

*vs.*

**WILLIAM J. CRUIKSHANK et al.**

**[23 L Ed 588] (See S. C. Reporter's ed. 542-569.)**

[No. 339.]

**Argued Mar. 30, 31, Apr. 1, 1875.  Decided Mar. 27, 1876.**

HEADNOTES

**Classified to U.S. Supreme Court Digest, Lawyers' Edition**

**Citizen of United States, and of State - protection of rights - right to assemble - constitutional amendment - national right - right of bearing arms - conspiracy - 14th Amendment - duty of government - right of suffrage - indictment - insufficient counts in.**

1. A person may be at the same time a citizen of the United States and a citizen of a State, but his rights of citizenship under one of these governments will be different from those he has under the other.

2. The Government should exercise all the powers it has for the protection of the rights of its citizens, but it can exercise no other.

3. The First Amendment to the Constitution, which prohibits Congress from abridging the right of the people to assemble and to petition the Government for a redress of grievances, was not intended to limit the powers of the state governments in respect to their own citizens, but to operate upon the National Government alone.

4. The right of the people peaceably to assemble for the purpose of petitioning Congress for a redress of grievances, or for anything else connected with the powers or the duties of the National Government, existed long before the adoption of the Constitution and is an attribute of national citizenship and, as such, is under the protection of and guarantied by the United States.

5. An indictment for conspiring to hinder persons in their right to assemble, which does not allege that the object of the defendants was to prevent a meeting for such a purpose, is not within the Statute of May 31, 1870, nor within the scope of the sovereignty of the United States.

6. The right of bearing arms for a lawful purpose is not a right granted by the Constitution;

LED                                             1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

neither is it in any manner dependent upon that instrument for its existence.  The Second Amendment declares that it shall not be infringed, but this means no more than that it shall not be infringed by Congress.

7. It is no more the duty or within the power of the United States to punish for a conspiracy to falsely imprison or murder within a State, than it would be to punish for false imprisonment or murder itself.

8. The Fourteenth Amendment prohibits a State from depriving any person of life, liberty or property, without due process of law, and from denying to any person within its jurisdiction the <*pg. 589> equal protection of the laws; but this provision does not add anything to the fundamental rights of the citizen under the Constitution.

9. Every republican government is in duty bound to protect all its citizens in the enjoyment of an equality of right.  That duty was originally assumed by the States and it still remains there.  The only obligation resting upon the United States is to see that the States do not deny the right.  This the Amendment guaranties, but no more; the power of the National Government is limited to the enforcement of this guaranty.

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**JOHN K. KENNARD, Plff. in Err.,**

*vs.*

**STATE OF LOUISIANA, ex rel. Philip Hickey Morgan.**

**[23 L Ed 478] (See S. C. Reporter's ed. 480-483.)**

[No. 60.]

**Argued Dec. 1, 1875.  Decided Jan. 10, 1876.**

HEADNOTES

**Classified to U.S. Supreme Court Digest, Lawyers' Edition**

**Due process of law, what is - State Courts - rule to show cause - precedence - Constitutional provision.**

1. The due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights, is due process of law.

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

PAUL POE et al., Appellants,
*vs.*
ABRAHAM ULLMAN, State's Attorney

JANE DOE, Appellant,
*vs.*
ABRAHAM ULLMAN, State's Attorney (No. 60)

C. LEE BUXTON, Appellant,
*vs.*
ABRAHAM ULLMAN, State's Attorney (No. 61)

## 367 US 497, 6 L Ed 2d 989, 81 SCT 1752

[Nos. 60 and 61]

**Argued March 1 and 2, 1961.**

**Decided June 19, 1961.**

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[17]  Were due process merely a procedural safeguard it would fail to reach those situations where the deprivation of life, liberty or property was accomplished by legislation which by operating in the future could, given even the fairest possible procedure in application to individuals, nevertheless destroy the enjoyment of all three.  Compare, e. g., Selective Draft Law Cases, 245 US 366, 62 L ed 352, 38 S Ct 159, LRA1918C 361, Ann Cas 1918B 856; Butler v Perry, 240 US 328, 60 L ed 672, 36 S Ct 258; Korematsu v United States, 323 US 214, 89 L ed 194, 65 S Ct 193.  Thus the guaranties of due process, though having their roots in Magna Carta's "per legem terrae" and considered as procedural safeguards "against executive usurpation and tyranny," have in this country "become bulwarks also against arbitrary legislation."  Hurtado v California, 110 US 516, at 532, 28 L ed 232, 237, 4 S Ct 111.

However it is not the particular enumeration of rights in the first eight Amendments which spells out the reach of Fourteenth Amendment due process, but rather, as was suggested in another context long before the adoption of that Amendment, those concepts which are considered to embrace those rights "which are ... fundamental; which belong ... to the citizens of all free governments."  Corfield v Coryell (Pa) 4 Wash CC 371, 380, 386, F Cas No. 3230, for "the purposes [of securing] which men enter into society," Calder v Bull (US) 3 Dall 386, 388, 1 L ed 648, 649.   Again and again this Court has resisted the notion that the Fourteenth Amendment is no more than a shorthand reference to what is explicitly set out elsewhere in the Bill of Rights.  Slaughter House Cases (US) 16 Wall 36, 21 L ed 394; Walker v Sauvinet, 92 US 90, 23 L ed 678; Hurtado v California, 110 US 516, 28 L ed 232, 4 S Ct 11; Presser v Illinois, 116 US 252, 29 L ed 615, 6 S Ct 580; Re Kemmler, 136 US 436, 34 L ed 519, 10 S Ct 930;

[367 US 542]

Twining v New Jersey, 211 US 78, 53 L ed 97, 29 S Ct 14; Palko v Connecticut, 302 US 319, 82 L ed 288, 58 S Ct 149.  Indeed the fact that an identical provision limiting federal action is found among the first eight Amendments, applying to the Federal Government, suggests that due process is a discrete concept which subsists as an independent guaranty of liberty and procedural fairness, more general and inclusive than the specific prohibitions.  See Church of Jesus Christ of L. D. S. v United States, 136 US 1, 34 L ed 478, 10 S Ct 792; Downes v Bidwell, 182 US 244, 45 L ed 1088, 21 S Ct 770; Hawaii v Mankichi, 190 US 197, 47 L ed 1016, 23 S Ct 787; Balzac v Porto Rico, 258 US 298, 66 L ed 627, 42 S Ct 343; Farrington v Tokushige, 273 US 284, 71 L ed 646, 47 S Ct 406; Bolling v Sharpe, 347 US 497, 98 L ed 884, 74 S Ct 693.<*pg. 1019>

LED2                                1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

# § 4241.  Determination of mental competency to stand trial or to undergo postrelease proceedings

(a) **Motion to determine competency of defendant.**   At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

(b) **Psychiatric or psychological examination and report.**   Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c) [18 USCS § 4247(b) and (c)].

(c) **Hearing.**   The hearing shall be conducted pursuant to the provisions of section 4247(d) [18 USCS § 4247(d)].

(d) **Determination and disposition.**   If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**UNITED STATES of America v. James Peter PARDUE**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**
**354 F. Supp. 1377; 1973 U.S. Dist. LEXIS 14702**
**Crim. No. 12758**
**March 1, 1973**

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

2. There is no federal facility available in which he can receive effective medical and psychiatric care and attention. As Justice Clark, sitting by designation, stated in Henry v. Ciccone, supra, 440 F.2d at 1054: "Again and again we have recognized that the F.M.C. is a penal institution and that one confined there suffers incarceration." See, also, United States v. Walker, supra, {354 F. Supp. 1382} 335 F. Supp. at 709; United States v. Jackson, supra, 306 F. Supp. at 6. 2

{1973 U.S. Dist. LEXIS 15} 3. Although an extremely dangerous person, cf. Greenwood v. United States, 350 U.S. 366, 76 S. Ct. 410, 100 L. Ed. 412 (1956), James' chances of attaining competency under the present conditions of his confinement are almost impossible. Cf. Jackson v. Indiana, 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972).

4. James' continued detention as a mentally deficient accused, without adequate treatment, has reached constitutional dimensions. His right to a speedy trial is now in jeopardy, and serious questions of due process and cruel and unusual punishment are present.

In United States v. Walker, supra, Judge Peckham found that the defendant was incompetent to stand trial, that the defendant's confinement for over a year under § 4246 was an unconstitutional commitment, and that the defendant had to be released from federal custody. Judge Zirpoli, in an analogous situation, reached a similar conclusion in United States v. Jackson, supra. In that case, Jackson was involved in the armed robbery of a bank in 1967, and, after presentation for plea, he was sent to the F.M.C. for a mental examination. Subsequently he was declared incompetent to stand trial. For the next 18 months he{1973 U.S. Dist. LEXIS 16} was confined at the F.M.C. until his return to court in August, 1969, upon the recommendation of the Director of the Center. After another competency hearing, the court concluded that Jackson was incompetent, that his mental illness was not transitory, and that he could not be cured in the foreseeable future. Citing recent developments in the field of mental illness, crime and the judicial response, Judge Zirpoli concluded:

> Mandatory commitment, absent treatment lays bare sec. 4246 to seemingly incurable constitutional infirmities . . . . Since there is no federal provision for civil commitment this court cannot direct petitioner's further confinement. Consequently, the petitioner is discharged from federal custody.

In the instant case, James' confinement has reached and surpassed any reasonable period of time permitted under §§ 4244-4246 commitments. The delay in a final determination has been due to the Court's vain hopes and futile efforts to find a satisfactory solution to James' predicament. It now appearing that there is no other alternative, James must be discharged from federal custody.

Accordingly, with great reluctance, it is hereby

Ordered:

1. That James Pardue{1973 U.S. Dist. LEXIS 17} be released from federal custody and confinement;

2. That the defendant's motion to dismiss the indictment is granted; and it is further

Ordered:

That the effective dates of these orders be stayed for a period of 30 days to enable the government, if it wishes, to appeal to the Court of Appeals for the Second Circuit, or to make arrangements with appropriate state officials for the care, custody and treatment of James Pardue in the future.

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



FREMONT WEEKS, Plff. in Err.,

*vs.*

UNITED STATES.

[58 L Ed 652] (See S. C. Reporter's ed. 383-399.)

[No. 461.]

Argued and submitted December 2 and 3, 1913.  Decided February 24, 1914.

HEADNOTES

Classified to U.S. Supreme Court Digest, Lawyers' Edition

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

In the Boyd Case, supra, after citing Lord Camden's judgment in Entick v. Carrington, 19 How. St. Tr. 1029, Mr. Justice Bradley said (630):

"The principles laid down in this opinion affect the very essence of constitutional liberty and security.  They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employees of the sanctity of a man's home and the privacies of life.  It is not the breaking of his doors and the rummaging of his drawers that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty, and private property, where that right has never been forfeited by his conviction of some public offense, - it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment."

In Bram v. United States, 168 U. S. 532, 42 L. ed. 568, 18 Sup. Ct. Rep. 183, 10 Am. Crim. Rep. 547, this court, in speaking by the present Chief Justice of Boyd's Case, dealing with the 4th and 5th Amendments, said (544):

"It was in that case demonstrated that both of these Amendments contemplated perpetuating, in their full efficacy, by means of a constitutional provision, principles of humanity and civil liberty which had been secured in the mother country only after years of struggle, so as to implant them in our institutions in the fullness of their integrity, free from the possibilities of future legislative change."

The effect of the 4th Amendment is to put the courts

[232 US 392]

of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of law.  This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws.  The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.

LED                                              1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

| 29 LED 746, 116 US 616  Boyd v. United States. |
|---|

**EDWARD A. BOYD and GEORGE H. BOYD, Claimants of Thirty-Five Cases of Plate Glass, Plffs. in Err.,**

*vs.*

**UNITED STATES.**

**[29 L Ed 746] (See S. C. Reporter's ed. 616-641.)**

[No. 983.]

**Argued Dec. 11, 1885.  Decided Feb. 1, 1886.**

HEADNOTES

**Classified to U.S. Supreme Court Digest, Lawyers' Edition**

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[116 US 630]

The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions, on the part of the Government and its employees, of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors and the rummaging of his drawers that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offense; it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods is within the condemnation of that judgment. In this regard the Fourth and Fifth Amendments run almost into each other.

Can we doubt that when the Fourth and Fifth Amendments to the Constitution of the United States were penned and adopted, the language of Lord Camden was relied on as expressing the true doctrine on the subject of searches and seizures, and as furnishing the true criteria of the reasonable and unreasonable character of such seizures? Could the men who proposed those Amendments, in the light of Lord Camden's opinion, have put their hands to a law like those of March 3, 1863, and March 2, 1867, before recited? If they could not, would they have approved the fifth section of the Act of June 22, 1874, which was adopted as a substitute for the previous laws? It seems to us that the question cannot admit of a doubt. They never would have approved of them. The struggles against arbitrary power, in which they had been engaged for more than twenty years, would have been too deeply engraved in their memories to allow them to approve of such insidious disguises of the old grievance which they had so deeply abhorred.

[116 US 631]

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

BUTCHERS' UNION SLAUGHTER-HOUSE AND LIVE STOCK LANDING
COMPANY, Appt.,

*vs.*

CRESCENT CITY LIVE STOCK LANDING AND SLAUGHTER-HOUSE COMPANY.

**[28 L Ed 585] (See S. C., Reporter's ed., 746-766.)**

[No. 627.]

Argued Apr. 9, 10, 1884.  Decided May 5, 1884.

HEADNOTES

Classified to U.S. Supreme Court Digest, Lawyers' Edition

1

LED

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

These inherent rights have never been more happily expressed than in the Declaration of Independence, that new evangel of liberty to the people: "We hold these truths to be self-evident," that is, so plain that their truth is recognized upon their mere statement,

[111 US 757]

"that all men are endowed;" not by edicts of Emperors or decrees of Parliament or Acts of Congress, but "by their Creator, with certain **inalienable rights**" that is, rights which cannot be bartered away or given away or taken away except in punishment of crime; "and that among these are life, liberty and the pursuit of happiness, and to secure these," not grant them but secure them, "governments are instituted among men, deriving their just powers from the consent of the governed."

LED

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

# Amendment 13

**Sec. 1. [Slavery prohibited.]** Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

**Sec. 2. [Power to enforce amendment.]** Congress shall have power to enforce this article by appropriate legislation.

USCONST

1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**THOMAS E. POLLARD, Petitioner,**

*vs.*

**UNITED STATES OF AMERICA**

## 352 US 354, 1 L Ed 2d 393, 77 SCT 481

[No. 38]

**Argued December 3, 1956.**

**Decided February 25, 1957.**

LED2

1

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

[352 US 364]

**[18]**  Our law, based upon centuries of tragic human experience, requires that before a man can be sent to a penitentiary, he is entitled to a speedy trial, to be present in court at every <*pg. **401>** step of the proceedings, at all times to be represented by counsel, or to speak in his own behalf, and to be informed in open court of every action taken against him until he is lawfully sentenced.  These are not mere ceremonials to be neglected at will in the interests of a crowded calendar or other expediencies.  They are basic rights.  They bulk large in the totality of procedural rights guaranteed to a person accused of crime.

1

LED2

© 2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.